Case No. 10-2451 Grant Thornton v. Blair Stover Craig O'Dear v. Grant Thornton Grant Thornton v. Stover Case No. 10-2451 How did that happen? Was there a hearing, an oral hearing before the court, in which parties presented arguments first? Very brief argument, but it was... Was there an argument interposed by the applicant against challenging the mode and manner of proof which the applicant proposed to submit? Well, I really can't answer that, Your Honor. Well, the transcript that's in one of the briefs indicates that there's no objection to the way the court was proceeded. Certainly, that seems right. So the question is, what is the implication of that? Can it now be raised on appeal when the theory of this challenge was not presented at trial? It's my thought, Your Honor, that submissibility is really what we're talking about, and submissibility is always something that's preserved. It doesn't require wringing... Well, I think the efficiency of evidence is not weighed, is that right? I think there is... I'm not saying this is a rule in that regard, that if the evidence is insufficient, it could be raised on appeal. Right. And that's really what we're talking about fundamentally. How did the information come before the trial court about benefits that were received by Mr. Stover from the principal agreement? How did that come before the court? How did the court become aware that under this particular principal's agreement, he received the benefit of, you know, the money that the partnership with the company was making?  How did he know that? There are really two elements to that. How did he know that? There are two elements to that. One is, here's what he got from us. The other is that it somehow identified to the status of partnership, which is, I'm sorry, principalship. What he got from us was simply a K-1, an expurgated K-1 attached to a brief. Well, none of that was really disputed, was it? Say again? Was that disputed, that he didn't receive? No, Your Honor. No, not at all. And what about the auto thing? The auto thing, frankly, I don't remember. I mean, the things that were set out in the principal's agreement, right? His right to distribution of assets? Relative. From the firm, his right to this allowance for the automobile. These are all things that were contained within the principal's agreement. Were they not? They were not. They were not. The Vs, the Vs, in the sense of what he got. The important thing is what they were. The tribe court concluded that they were. The distinction, Your Honor, has to do with what the Vs were. What this document, the K-1, showed is he received some income that happened to be reported to him by way of a K-1. There was also some documentary showing, although not verified, that he received some sort of car allowance. There is absolutely no evidence that he received any distinct and incremental compensation amount by virtue of achieving principal's share. Let me ask this. Your position is, and I don't mean to prematurely get you, but your position basically is that under the common law, you can have a partnership created without a contract. And under the common law, you can have indemnification without a contract. And that is basically the gist of the underlying lawsuit in Missouri. Correct. Okay. Now, supposing there are benefits that can only be obtained through a contract, or a benefit that can only be obtained through a contract. Is that singular benefit sufficient to implicate the rule, the estoppel rule, that controls the determination that the contract is, in effect, enforced? So long as you have evidence and that evidence proves that there is automobile allowance. Your Honor, we can take a single benefit. It doesn't matter what it is. Where would that come from? Where would that come from? That automobile allowance is not from the contract. Actually, hypothetically speaking, Your Honor, there could be a situation, shown by some evidence, that an employer says to an employee, you're about to embark on a new chapter in your employment relationship with us. And we are going to extend to you $200 a month. Now, but that can be that parallel largesse by an employer. In any situation that you would, where the implication, the estoppel implication, is negated by the fact that he had a generous employer who gave it to him outside of the agreement. What does it take to establish the agreement, as opposed to the defense, that these are benefits that are dehorsing? It's really not dehorsing. What's the real dehorsing? The one and only question is, is estoppel proven in any case? Estoppel, of course, in this case, there has to be an estoppel relative to a written contract containing an arbitration clause. But that estoppel proof has to be that the employer communicates to the employee that if you decide to accept certain benefits, that means we are requiring you to also accept the terms of the agreement. Well, is that really what is essential? Supposing the contract promises certain benefits of a pecuniary nature and otherwise, and the employer, instead of articulating by saying, you know, that we're going to treat you like you're under a disagreement, simply provides those benefits and they're accepted by the employee who is aware of the content of that agreement, which he refused to sign. If the employee, shown by the proof, is aware of the conditional nature of the extension of benefits, and that's really the key, the two keys. Awareness, and that's actually mutual understanding, and contingent nature of the benefits being provided. Is that inferential? Can that be made inferentially on the basis that until the contract was proposed to elevate your client to principalship, those benefits were not forthcoming. Once the contract was proposed, the benefits were forthcoming, and those benefits match the benefits created under the contract, even though they may, in large part, also have alternative sources of binding commitment. Well, in this case, of course, Your Honor, there was no, without which not proof, about certain benefits being identified to this particular contract document, partly because the document, which is, of course, unverified, demonstrates solely that as to compensation, dollar compensation, it's up to the employer, just as it was before. There's absolutely no showing that there's any forensic signature to any dollar amount that he received as compensation. And exactly the same thing is true about the card expense. It simply says, you know, there's going to be a compensation for card expense. If there were these benefits that your client received disclosed to the court in open court, and by whom, and how? In other words, I'm getting back to the preceding issue as to the lack of affidavits. There was a K-1 that was attached to a set of suggestions filed by Grant Fulton. Well, how did the court know? The court knew of the salaries through the K-1, and the court knew of all the financial benefits through the K-1, including the car allowance? Frankly, I think that all the court learns from looking at a K-1 is that he received some income. And he received it, I'm sorry, it was reported to him on a K-1. We know what a K-1 is. It's how partnerships report. In other words, the court knew of the benefits to which he would have been entitled had he signed the agreement by virtue of the unsigned agreement being presented to the court in an evidentiary, in a manner that would be acceptable to the court under the rules of evidence. Absolutely not, Your Honor. What we have is an unverified application of compel that attaches, without a supporting affidavit, this blank template form of conduct. There is absolutely no dispute that this blank template form was presented to your client and rejected by your client. There is absolutely no dispute about that, Your Honor. His evidence, which was in the form of an affidavit, was that he was presented with a document, not necessarily this document. And, of course, what we have is no proof that he was presented with this document. Was this document attached as an exhibit to the application? Or was this documentation? The this document, if by this document... The unsigned... The template. Yes, it was, as an exhibit. Right. Was that application for arbitration, was there a response to that? That's pleading, right? Was there a response of pleading to that application? What's interesting, of course, is that... Yes, there was. There was a motion to dismiss. There was a motion to dismiss. And you filed a response. Isn't that true? Correct. I'm sorry? There was a response filed by your opponent. That's right. We filed a motion to dismiss in response to that. It happens that Section 2 of the Uniform Arbitration Act doesn't set up its own set of pleadings. So the court had an evidentiary, an acceptable template to view for whatever it was worth. No, Your Honor, it did not. All it had was an exhibit attached to an unverified plate. But it was, in your motion to dismiss, it was unchallenged. That's not true, Your Honor. What did you challenge? That you didn't sign it, but not that it was submitted. You didn't challenge the fact that it was submitted to you. What we challenged, Your Honor, was that Grant Corbin claimed that they presented this document, this very document to Mr. Stover, and that he refused. What did you challenge? That we were presented with this document. What? We were presented with this document. You were not? Not. You were not presented with it? That's the problem. Your response to the, or in your motion to dismiss, you say that he had some problems with it, so he never signed it. No, that's the problem. That's the way Grant Corbin characterized it. That is absolutely not what it says. He had some problems with the document that he was given, but that was not necessarily this document. He was not necessarily presented with this document, nor was there any evidence that he was presented with this document. Whatever document he was presented with, it happens that he voiced some concerns about, voiced them to Grant Corbin, never heard back, and in fact, Grant Corbin said- I want to interject here. Go ahead. Now, you say that the court should be looking at general estoppel principles. They say that when the court decides whether or not parties agree to arbitrate, the courts generally just apply state law principles that govern the formation of contracts. You don't cite a single case that says we look to estoppel. What is your authority for this suggestion that we're looking at estoppel, we're not really looking at general contract principles, can a party be bound to a contract that they haven't signed if they accept all the benefits of it? Well, the principle of, if you will, contract law, that a party can accept a particular contract if that party accepts the benefits of it, is an estoppel principle. It may be- And that is a determination to be made by the common law court and not by the arbitrator. That's absolutely correct. The arbitrator will determine once there is a contract whether something falls within the scope of the agreement, but the initial determination as to whether there is an agreement is still made by the court. Well, the scope thing is actually- Because I think that the Federal Arbitration Act goes further. On what point? On who decides whether there is a contract arbitration. I don't think that's absolute correct, Your Honor, but in any event, I don't think that Section 2 is much different from the FAA when it comes to the proceedings to compel arbitration, for example, which is what we're talking about here. I, of course, haven't tried to research the FAA on burden of proof. Is there anything else that you want to talk about? Well, I think we've pretty much covered it, Your Honor. Just to summarize briefly, this case is primarily about is there a burden of proof and what is that burden of proof under Section 2? Secondarily, if it's a burden of proof issue that this court is presented with, what's the standard of review and is deference owed to the trial court? And we always know, we always apply the rule, that if it's a sufficiency of the evidence question, that's a strictly legal question as to which no deference to the trial court is owed at all. So there are two very fundamental questions in this case. Both of which are fairly simple. Is there a burden of proof? If so, what is it? It certainly is not barren allegations of a pleading. And if there is a burden of proof that hasn't been satisfied, is that subject to a deferential standard of review? It is not subject to a deferential standard of review. Thank you. Thank you, counsel. You'll be given some time in rebuttal where you can discuss the before and after issue. Counsel. Your Honors, may I please report? I'd like to start by answering a couple of questions that the panel asked of Mr. Stover's counsel. And particularly about what happened at the oral argument hearing with the trial court. Only if it's a record, okay, counsel? Absolutely. I attended the hearing. And we attached the transcript to our brief. And I believe it is, well, it's appendix A-1 through A-15 of our brief. And the questions about how the court, what it had before it, and how the court had it before it was, the answer is this. The Schedule K-1s by which Mr. Stover accepted income, partner income from the grant court and accounting firm, we attached. Now, we redacted the amounts. But for 2000, 2001, and 2010. You attached it to your application? We attached it to our brief in response to their motion to dismiss our motion for. Was there an affidavit? There was not an affidavit, Your Honor. So how does the affidavit get to the court without an affidavit to authenticate it? Well, our position on all of this is everything was admitted. There was no, this application, first of all, for the K-1s specifically, this judge, we submitted them and said these are the K-1s and this is what the K-1s show. This judge, according to the transcript, the fourth page of the transcript, he advised everybody present to what he reviewed. Does anyone have anything they want to add that they did not include in their filings? Mr. Stover's counsel declined. I had one point I wanted to clarify to make sure the court knew the difference between a principal and a partner at grant court because it's very important. And I will tell you, I was immediately made aware this court knew exactly what that difference was and this court found it highly relevant. The court cannot create evidence no matter how explicitly it purports. And I understand that. Your question, Your Honor, to Mr. Stover's counsel, are you contesting their use of your pleading? His answer was no. Where is that? No, that was in the argument that just took place. You asked Mr. Stover's counsel in this argument that just took place, you said are you contesting their use of your pleading? No, no, I asked the question whether he's contesting your use of Mr. Stover's pleading. That's what I meant. That would be an admission. Exactly. That's what I'm getting to. But I looked at that pleading. There's very little in it. Well, here's what's in it that is absolutely critical to this issue. In it, and this is what the trial court found explicitly, paragraph 2 of the petition, which is attached to Mr. Stover's brief. Where is that? Okay. That is... There's two copies of it. It's hard to read. Yeah. That's what I'm trying to find. Okay. It's at A7, appendix page A7 of their brief, this petition. And I'm reading from the second paragraph. And this is really, I believe, what the trial court was a cornerstone of the trial court's opinion. Mr. Stover, in Missouri, pled. In 2000, plaintiff was promoted to a full equity principal at grant. Yeah, but he claimed that that promotion doesn't need an agreement. Well, if that were truly his position, and your Honor pointed out under common law, you can have, you clarified his argument, isn't it, what you're saying, that you can have a partnership and indemnification under common law? Well, that's what he... That's his argument. That's what he argued. That's his argument, but it's not what they pled in Missouri. They pled in Missouri. But they pled it here. Were they... You know what he did? He filed an affidavit here in the trial court that contradicts this allegation and this pleading. Because here's what he said. In the Missouri petition, he says, In 2000, plaintiff was promoted to a full equity principal at grant. And then he explains the principal is the equivalent of a partner. Okay, that's clear. And the trial court found. That statement shows Mr. Stover is connecting to the principal's agreement because the only way you get Mr. Stover contending he's a principal is through that agreement. If he's contending he's... Because there's no... The construct of principal is a creature of the contract and not a creature of the law. Exactly. And that's what this court found. Now, you know, one of the things I learned from a tape I watched of Vincent Bugliosi about criminal law, he says, The most powerful, the most probative evidence in a court of law is evidence of consciousness of guilt. We have here evidence of consciousness of having admitted the key issue in this proceeding here today. In Mr. Stover's affidavit, and this is Appendix 68 in the same brief, he makes a different allegation. In that affidavit, now we're in Chicago in court. We're not in Missouri any longer. He says, I was made a partner by Grant Thornton in the summer of 2000. Well, that's not his pleading. That's not his allegation in Missouri. His allegation in Missouri says I was promoted to full equity principal. That's an allegation that arguably is one of nomenclature rather than status. Well, the trial court found that given the presence of the principal's agreement, which we attached and was in front of the trial court, and given the fact that that nomenclature doesn't exist anywhere else in the law or in this relationship between these parties except in that principal's agreement, the trial court said that shows that Mr. Stover knew he was a part of that agreement. He knew that he had indicated to Grant Thornton. What would it do with the fact that he refused to sign? Well, here's why. Isn't one of the estoppel principles or evidence that enters into determining whether there's an estoppel, doesn't it focus on the acquiescence of the subject to become part of that agreement? If you read the trial court's opinion, it is clear that the trial court found that to be not credible. The affidavit presented, while it says that Mr. Stover refused to sign, then frankly, I want to make it very clear, and we made it clear at the trial judge, we don't know whether he refused to sign or not. All we know is that we can't find a signed copy. Was that agreement severable? Was it what? Severable. The agreement severable. Is it possible to have acquiesced to part of it and not to other parts of it? I believe every principle in the law. But doesn't the inquiry, once you get to the estoppel, does the inquiry not get that far? I believe every principle in the law is that when somebody accepts the benefit of a written agreement and they decide to do that, which Mr. Stover clearly did, then you are bound by the agreement. You cannot pick and choose the parts of that agreement you want to rely on and say, oops, king's X, I had my hands crossed. You can't, you know, I'm not going to rely on the rest of it. One of the cases you cite, one of the cases you cite is Molina v. Budweiser. In that case, you know, it's distinguished from what we have here. There was a statement given to the employee that continued employment or continued acceptance of employment means you were sent to the terms of this booklet. Is there anything in the record which shows that there was such a condition presented to Stover in this case? Anything in writing, anything in the record which shows that he was given the choice of continued employment and accepting the agreement as written, whether he signed it or not, or he was out? Is there anything like that? There is nothing like that in the record, Your Honor. Suppose there's an acceptance of benefits, but a disclaimer of being bound by the provisions of any agreement. Supposing, in other words, he says, okay, I'll accept partnership, et cetera, but I'm not signing that agreement. Well, there's no evidence that he did that even in his affidavit. Okay? And this is in his affidavit. He doesn't say. He doesn't have a specific story. Is the affidavit in your brief or attached to his brief? Attached to their brief. It's Appendix 68. Your client being the employer, didn't it have the authority to at some point say, wait a minute, we gave you this paper. You didn't sign it. Either sign it or we're not going to pay you anymore. We're going to discontinue the employment or at least say if you continue taking the money, we're going to hold you to it. There was nothing that was done to enforce the signing of this agreement? Well, Your Honor, I want to make it very clear that in our investigation, we advised the trial court of this. We don't know whether he signed it or not. Okay? And you made reference to all of the underlying investigations of this man in federal court, in Kansas City, in the Eighth Circuit, that's been all the way up to the Eighth Circuit, and other proceedings. So you never received a signed copy? Yeah. We got a lot of records of missing. And so what we know, we don't have a signed copy, but we're not admitting that he never signed it. He doesn't have to dig it to say he never did. He does. That's right. And what we have is we know that we promoted him. We know that we promoted him under the principal's agreement, and we have that agreement. And he does not, by the way, the representation today is, oh, they gave us a different agreement. It's not in both stores' affidavit. He does not say here, hey, wait a minute. He doesn't say he got a different agreement. He simply says he didn't admit that this was the agreement he received. I think paragraph 10 says, although Grant Thornton presented me with a form of partnership agreement at the time I was made partner, I had concerns about the term of that document and never signed it. And I think that's page 69. Right. Mr. O'Neil, I have a question. Doesn't the law of the state of Missouri bar him from being a partner because he's an attorney? Isn't that what this was? Well, exactly. The whole reason we have the structure is a non-CPA cannot be a partner. A non-CPA cannot be a partner. So you want to be a partner. Under Missouri law. So he keeps referring to himself as a partner, even though Missouri law actually prohibits this. I'm not sure that it's Missouri law. I think it may be a training court. Well, somewhere in here. Well, I think it's a professional. I think it may be a. Professional responsibility rule. I think. Don't hold me to that. Well, somewhere in here I've read this. Because he was not a certified public accountant. Correct. Under Missouri law, he could not be a named partner of this accounting firm. Whatever the source of the law is, I do agree, Your Honor, with your question, is that that's the reason he was promoted to be a principal and not a partner. He couldn't be a partner. Isn't that what's alleged here? That's right. Under Missouri law, he could not be a partner in this firm, and yet he keeps referring to himself as a partner. To me, that's a question that needs some additional clarification for a collateral reason. Because I'm under the assumption that your position is that the term principal is only a construct of the agreement. But if under Missouri law, CPAs can't be partners in accounting firms, then I'm sure that under the accounting culture in that jurisdiction, that word principal is not unique. Well, I'm not aware of it existing anywhere outside of the accounting profession. All right. But he's an accountant. I mean, in other words, to what extent are we compelled to find that in using the term principal, that he is in effect accepting a benefit confirmed only by this unsigned agreement? The point is addressed at page three of our brief in the Statement of Facts. And what we say is, and we don't cite this because we frankly didn't think the source of it mattered, but it says the position of principal exists, it's in the middle of page three, because under regulation it's not otherwise relevant to this appeal, and I frankly, I don't think are at issue. Only CPAs may be partners in public accounting. And that's the reason we have the principal's agreement, and that's the reason why a gentleman or individual in the position of Mr. Stover, to the extent he calls himself a principal, he's getting that from no place other than the principal's agreement. Or to the extent he calls himself a partner, he's still getting it nowhere other than the principal's agreement because there is no authority making him anything like a partner, entitling him to partnership income through a K-1 schedule, other than the principal's agreement. It all goes back to the principal's agreement, and it's precisely what the court said. Why is this a question of law for us to decide? Why is it, in your opinion, an abuse of discretionary standards? Well, in the brief, Mr. Stover contends that, first of all, it says it's a case of first impression, but he says the standard's de novo because it was made without factual findings. I think, if you read this transcript, this court made factual findings based on a record in front of it that was not in dispute. But these findings are based totally on written documents, is that right? Exactly. And the cornerstone being a pleading filed by Mr. Stover against Grant Thornton in Missouri. Isn't there a case law which allows the Reviewing Court to treat de novo? Document cases to be decided de novo. My view of this, I'll tell you. There's no deference given to the trial judge's opportunity to assess demeanor. My assessment of this standards review issue, somebody made the comment it doesn't make a big difference. Frankly, I'm not sure there is. I think it comes down to whether there was a sufficient showing made to the trial court. However you view it, I think that's the issue. And I believe this showing to the trial court, and again, if we read the trial court's, I'm going to tell you, I think he dictated this very well from the bench. It is a showing that is admitted. Mr. Stover's counsel were there. They didn't take issue with any of these facts that the trial court relied upon in announcing his ruling. And the cornerstone of it was the admission in court in Missouri that he is a principal. And if he's a principal and promoted a principal, there is no other document and no other authority for making that judicial allegation other than the principal's agreement. Is it clear that admissions inferred through silence applies in the context of a court's promulgation of its decision? Well, I would say there are potentially two things at issue. First of all, the key judicial admissions here, and there are several of them that the court points out in its opinion, are judicial admissions. He doesn't just say in his pleading that I was promoted to principal in 2000. He goes further, and here's what he also says. In paragraph 6 of the petition, he makes an indemnity request in part based on Illinois limited liability partnership law. Now this goes back to the issue. If he was contending he was only a common law partner, you'd make the request under common law indemnity law. He is contending I'm effectively, under Illinois law, a partner in a grant-funding accounting firm. Does the principal's agreement provide any protection for him? Is there any suggestion in his complaint, or is there any suggestion in the actual principal's agreement that this sort of indemnification would be something that he would receive as a principal? Sure. Yeah, that's what he's suing on in the Missouri case. Under common law principal partnership law, he's entitled to indemnification. No, he's saying both. What about the document? Does the document provide indemnification? Yes. I don't believe you've suggested that. It is absolutely, I've got to find the records. 26. Excuse me. Yeah, he is relying, oh, it's, yeah, Article 26.5. He is absolutely relying in the Missouri case on an indemnity provision in the principal's agreement, and this is another thing the trial court below made reference to. Here's another thing he did. The acceptability provision, too, in case you wanted to know. Paragraph 8 of the petition, it also alleges that the claims asserted in the federal civil court action involved transactions that took place, and this is his allegation, while the defendant was an employee or principal of the firm. So, once again, and this is what the trial court, well, he said, throughout, this is A10, which is the trial court's opinion. Page. Throughout, this is Appendix 10 of our brief, which is the trial court's opinion, the transcript of the hearing. Throughout the Missouri case, the defendant in this case refers to himself as a principal rather than a partner, and the court finds this significant because the defendant herein is only referred to as a principal rather than a partner as a result of the principal's agreement. So he finds, the trial court finds that as dispositive virtually on the issue. He says, therefore, the court finds that the defendant is bound by the principal's agreement by virtue of his conduct and his representations and affirmance in the Missouri case, and if that's the case, he's also bound by the arbitration provision. And before that, before that part, he goes through and lays out that the court is finding is both the affirmance in the Missouri petition as well as the acceptance of benefits. And this is at page A9 of his opinion. It says the employer in this case argues that Mr. Stover accepted the principal's agreement by admitting he was a principal of Grant Thornton in the Missouri case, and that he received the principal's agreement. He alleged in the Missouri case that he was principal to plaintiff and thus entitled to indemnification of his legal fees arising out of the federal case at issue. And he received benefits under the principal's agreement, including his share of the plaintiff's and court's income in 2000, 2001, and 2002. And then he also points out that we argue that the automobile allowance is another point in that favor. At the bottom of A9, it says the court does find that the defendant is bound by the terms of the principal's agreement despite the absence of a signature. It is clear to the court that the defendant accepted his share of the profits as set forth in Article 7 of the agreement. That's a reference to the principal's agreement. But again, we get to the point of the conditional. Where's the condition? If you accept this, you're bound by the agreement. I mean, he was paid, he accepted. Where's the condition? If you do accept them, therefore, you will be bound by the agreement. I think that's the general principle of Illinois law that is cited in many, many cases. But shouldn't there be some admonition? Is there cases where there's been an absence of any admonition at all, where there's just been payment and no admonition, acceptance of payment is making subject of this agreement? I know of no Illinois case that says a person, a party to a written agreement, who indicates by conduct and action a sense of the agreement. Is anything other than bound by the agreement, period, the end, without conditions? Well, I'm asking, we see in the Budweiser case there was an admonition given. Do you have a case where there was no admonition whatsoever, like in this case, where there's no admonition whatsoever, but the acceptance of the pay is still binding? I can't cite you one, but my understanding is that there are many cases that stand for the proposition I just stated. And I understand the case you're citing, there was an admonition. Here you have something more troublesome than the fact that there was no admonition, in that there was a disclaimer in the rejection. One thing to have a written agreement with no rejections, but not some, as opposed to some explicit rejection of the agreement by the subject of it, who then accepts benefits, which led you to say that the trial judge was not enthusiastic about believing the subject at the time. But there was an alternative that was presented that he didn't reject. Well, what we have is his conduct, as the court pointed out, followed by his three, that I've just cited to you, judicial missions in his pleading in Missouri, where he sued Grant Thornton, claiming on three different occasions in three different paragraphs that he, in fact, was a principal of Grant Thornton and seeking indemnification under the principal's agreement. That's what we have. And our assertion is that that is plenty to support the trial court's conclusion and ruling under any standard of review. Supposing that he would have contemporaneous to his acceptance of these benefits, displaying his intent to become subject to the agreement, to sign it. There's no evidence that he did that. Supposing, I'm asking hypothetically, is this simply a question of inferring intent? Well... Or is it... See, estoppel is something other than inferring intent. Estoppel has to do with some degree of equitable fairness kind of... All we have on the record is his affidavit that says he had issues. And what would have happened to Grant Thornton had he come to us and said, for example, I don't like the arbitration clause or something like that. I don't know what would have happened. I suspect in a professional firm like Grant Thornton, if they had any reason to believe he was suggesting he wasn't bound by the contract that everybody in the firm, either the partnership agreement or the principal's agreement, is bound to the firm by, there would have been a big timeout. But that's hypothetical. Do we have a transmittal letter that says here the agreement returning at your convenience, that you're bound by this? No. What we have is his admission that he was given a principal's agreement. He admits it. He's not saying that the one we gave the court and indicated this is what was given. He's not saying, no, that's wrong. He doesn't even say that to that. He doesn't admit that it's the right one, but he doesn't say, no, it's not the right one. You know, ordinarily, I suppose you can speculate in all kinds of ways that Grant Thornton is engaging in that right now, and I'm certainly not going to be influenced by it if that's all it is. But you would think that if he didn't sign the agreement, and Grant Thornton is still treating him as a partner, that the agreement in the Grant Thornton culture was secondary, saying, look, you're a partner, you're a principal. Now, since you're a principal, I want you to sign the agreement. But that the appointment to partnership preceded the signing of the agreement, so that it wasn't the device by which the elevation of partnership or principal should occur. I will agree that there's a lot of things we can speculate about what if, proceeded with business as usual when it didn't have the signature. It assumes, a lot of questions assume that they actually didn't, and that the right person knew they didn't. Okay. But what they did know is they had conduct that gave them every reason to believe he had agreed to this agreement. Unless you say that the partnership is something to which you're anointed or elevated without him. And then the partnership agreement then becomes something partners sign when they're already partners. And I agree, but that, what I'll go back to is, those notions, the Missouri Pleading shows that Mr. Stover himself doesn't believe them. The Missouri Pleading shows that Mr. Stover himself knew and believed that he was, in fact, a principal at Grant Thornton. And there's only one way to be a principal, and that's to be a party to that agreement. The last thing I would say is the request for relief. There's an alternative request, but the primary one is, they're asking the court just to overrule and rule the other way based on this record. Which to me shows, that's an implied concession that, sure, there's enough here to make a ruling. We just want you to rule the other way. We just think the trial court was wrong. We want you to rule the other way. And it also suggests to me that, I mean, obviously, to me, if they really think there's evidence that would persuade a trial court to go the other way, you know, what we should be talking about here is a hearing where they can come and present that. It's interesting to me they don't seem to be asking for that. And again, I believe it's because Mr. Stover's filed an affidavit. If there was something he had to say that could really change this analysis, something that he could bring to the trial court, I think he'd be asking for a chance to do it. And what he's asking to do is to be relieved of the admissions that he made. If there is good sufficient evidence that that should be the case, and I'm not at all saying that that is the case, but if that hypothetically should be the case, then upright reversal is not inconsistent with that because it's depending who has the burden of proof. If that burden of proof fails, then the issue is decided in favor of the opposing party. If that would have been what happened. I understand your point, but obviously, to me, that suggestion is, now, they ask an alternative for an opportunity for hearing. But to me, what they're asking for is an opportunity to contradict what they pleaded three different times in Missouri pleaded. And I think that that is an exercise of futility for them. Is anybody going to be talking about the before and after issue? Before the motion to clarify and the jurisdictional implication of not having designated the denial of the modification order as being jurisdictional? Your Honor, we'll stand on our brief on that point. About two minutes. I'll try to make it brief. I'm not sure if counsel for Grant Thornton misunderstood the question, but 26.5 of the template agreement is not an indemnification clause. It's the arbitration clause in the government of the American Indian language. Nor does the petition in Missouri allege any right to relief under any indemnification provision of any particular principles agreement. Is there any in this agreement? Indemnity? No. As a matter of fact, I think that's in my brief somewhere. I don't think it is. The focus of Grant Thornton's argument here is that the trial court concluded that the only way that Stover gets to be a principal is by way of the principal's agreement. Well, the problem, of course, is twofold here. There was absolutely no evidence that this particular document was even the principal's agreement that was in effect at the relevant time, much less than the evidence that Grant Thornton conditioned the receipt of particular benefits on the assent to an amnesty trial. Well, one has to rule with the evidentiary rule with regard to silence in the face of court's assertions  if the court says, you know, this is the agreement whose lack of signature is in question. And that's the agreement that uses the term principal. And that's the agreement that would give rise to indemnification. And this defendant, or this appellant, or this plaintiff, accepted those benefits. And that plaintiff stands by with no scintilla of argument, either before, during, or after those assertions by the court to challenge them. What, if any, inferences as to the likelihood that they constitute admissions or waivers, or one or the other of those constructs, should apply to those statutes. I think, Your Honor, what we're really talking about in this instance is a preservation of error question. And what we have here, of course, is a very abbreviated… Well, then it's a waiver. Then we're talking about… Then there isn't any notion of a voluntary waiver in the traditional sense of waiver, nor is there any estoppel, nor is there no representation to anyone that's been relied on that we don't contest the sufficiency of the evidence. And after all, we are talking about a sufficiency of the evidence complaint. Well… It happens that the trial court… The sufficiency of the evidence will depend upon the, I suppose, the cogency of the inferences drawn by the court as to where those benefits, as to what the basis for the acceptance of those benefits pertains to. And actually, the sufficiency of the evidence, strictly speaking, devolves on the question of whether the trial court had any evidence from which to draw any inferences whatsoever. You said… You moved to dismiss this under 615. Is that right? If I did, I… Well, that's what you say. It's in your motion. And they responded that… That's what it says. It says 2615.  I mean, this is an unusual sort of situation where there's a motion to compel and then the other side doesn't want to submit to arbitration. So, you filed a motion to dismiss under 2615 saying that there wasn't… that this really doesn't state a cause of action. That's what 2615 is about. Anyway, and they responded. So, basically, the court has, you know, your motion and has the underlying complaint and has their response and has the affidavit. And he's basically saying, well, there's enough here to state a cause of action, the way I read it. And then he proceeded to order arbitration, because he said that the, you know, the motion to dismiss, based on the original motion to compel, there was enough there to get past the motion to dismiss. All that being said, and by the way, earlier when I used this… Unusual situation, but this is what… this is the kind of vehicle that the lawyers are using. They moved to compel, but then you moved to dismiss under 2615. And they responded under… But that motion, by the way, counts, I think, under Section 2A. I'm sorry, it's… Yeah, but was there enough for them to get past your motion to dismiss? And the court said there is. There's enough here. There's an underlying complaint in Missouri where you say you're a principal. You were made principal. So, the court is basically saying, well, there's enough here to say that, you know, you can get past this motion to dismiss. Well, the motion to dismiss would be looking to their pleading, not to yours. And they certainly… It's the pleading's motion. And they certainly pled enough to stay in the case. The question is whether they proved enough. But the fact that they pled enough really is without question. It's also without consequence. That's right. But it's a question of… Yeah. Yeah. Under Section 2, the Uniform Arbitration Act, the court is to summarily determine, so long as there's been a claim to compel arbitration in opposition… …that would have nailed down your position. But simply staying within the pleadings would not permit you to be negating any of their assertions because on the 615 motion, the allegations of the pleadings have to be taken as true. Well, I think that somewhere in that motion, it can be concluded that there was a denial of the claim by Grant Horton that there was an enforceable arbitration agreement between the parties. And that's what's called for in Section 2 of the Uniform Arbitration Act, which, as I mentioned, doesn't explicitly spell out the procedures to be followed other than describing an application and some sort of an opposition to that application. And then a summary determination, which is not to say taking as true, taking as proven, the bare allegations of the parties pleading. And that's the important, central question in this case. Do you think that's it? Thank you, Your Honor. Thank you, gentlemen. If the case was very well argued and very well briefed, then we'll be taking it under as much.